IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ELLEN L. BROWN                                                                               PLAINTIFF

v.                                         CASE NO. 13-cv-4065

TYSON FOODS, INC.                                                                          DEFENDANT

### MEMORANDUM OPINION

Before the Court is Defendant Tyson Foods, Inc.'s ("Tyson") Motion for Summary Judgment. (ECF No. 10). Plaintiff has filed a response (ECF No. 13), and Tyson has filed a reply. (ECF No. 17). The Court finds this matter ripe for consideration. For the reasons explained below, Defendant's motion is granted.

### BACKGROUND

This action involves claims for race discrimination, retaliation, and hostile work environment. Plaintiff is a former employee of Defendant Tyson. She brings several claims arising from her two suspensions and subsequent termination in November 2012.

Plaintiff, an African-American female, was an hourly employee at Tyson's facility in Nashville, Arkansas from August 8, 2009, until her termination on November 2, 2012. Tyson states that Plaintiff was terminated under a Tyson policy which provides that an employee who receives two written warnings in a 12-month period will be terminated. Plaintiff received suspensions in September 2012 and October 2012. In accordance with the policy, Plaintiff was terminated. The main dispute in this case centers on Plaintiff's second suspension in October 2012.

On September 21, 2012, Plaintiff was suspended after video surfaced of Plaintiff "shaking her tail" and placing money in the shirt of a male co-worker who was performing an

1

"exotic" dance in a Tyson facility. The video was uploaded to Facebook, and subsequently reported to Tyson. Plaintiff's supervisor concluded that Plaintiff's participation in the video was in violation of Tyson's "Harassment/Discrimination Policy" and terminated her employment on September 26, 2012. Plaintiff appealed the termination to Nashville Complex Manager Paul Britt, and her disciplinary action was then reduced to a written warning with a suspension.

In October 2012, Plaintiff complained to Carolyn Box, her human resource shift supervisor, that her co-workers were mistreating her and that certain co-workers were receiving special treatment from supervisors. Plaintiff's written statements on October 22, 25, and 26 allege that Plaintiff was called an "Uncle Tom," a "snitch," and a "Mexican Lover"; that certain co-workers engaged in inappropriate relationships with their supervisors; and that certain co-workers received special treatment from these supervisors. (ECF No. 10, Exhs. 7-9). According to Plaintiff, the main source of conflict between her and her co-workers had to do with the fact that she was reinstated after being terminated. Plaintiff claims that she was being picked on "to see if [she] was going to go off." (ECF No. 10, Exh. 1, p. 89).

Based on Plaintiff's written statements, an investigation was opened. Plaintiff was instructed not to discuss the investigation with her co-workers or to have contact with any of the witnesses. On October 25, 2012, Carolyn Box interviewed one of Plaintiff's co-workers, Candie Hooper, to inquire about the alleged name-calling being directed at Plaintiff. On October 26, Hooper provided Box with two Facebook posts from October 26 that were directed toward Hooper from Plaintiff's Facebook account. The first post stated "Bitch I got u tho. Bad built ass. get a life my daughter got u cause i will." (ECF No. 10, Exh. 10). The second post was lengthier:

> @ This Bitch name Candie Im not your Murthafuckin friend an I think I said sumthing to an at your Ass earlier. About looking on my page u dnt no

> anthing about me nor my husband. An first of ALL I can put whatever I want on my Damn page if u dnt like it when Delete your ass from my page. An first of All your Bitch ass keep looking in my Damn mouth every Lyme Im talking if Im not talking to you what the fuck u getting a mouth full of nothing. Just to let u know hater are my motivate. So since you think I talk to guys an calling it adultery. Bitch u dnt know anything about me but my first Name So u need to Think B4 u Speak. An go find your Babies Daddy an stop-fuckin your friend Man. With your bad bult ass with your back pocket touchin your knees as get u a Booty Pad So your pants stop falling. Now go tell that Bitch, So u will be Delte. An stop having one night stand with all your riders Suckin they Dick. U Brought this on your own.

Plaintiff claims that her daughter was the author of these posts. Plaintiff's daughter confirmed that allegation and testified that she authored the posts and showed them to Plaintiff on the night she posted them. However, at the time the investigation was taking place, Plaintiff never told Tyson that her daughter was the one who made the posts. Plaintiff later testified that anyone looking at the posts would be justified in believing that she had authored them because they were written under her account.

Carolyn Box suspended Plaintiff until November 2, 2012 pending an investigation. The suspension states: "[Plaintiff] violated instructions given to her by HR to not discuss an investigation nor have contact with any of the witnesses or participants. On October 26, Ellen posted an intimidating post on Facebook directed at a witness in the investigation." (ECF No. 10, Exh. 12). After an investigation, the suspension was upheld. In accordance with Tyson policy, Plaintiff's second suspension in a 12-month period resulted in her termination. (ECF No. 10, Exh. 6).

Plaintiff alleges that Hooper, a Caucasian, engaged in the same type of behavior outlined above but was not disciplined by Tyson. Plaintiff claims that posts from her account were in response to a derogatory Facebook post by Hooper. Plaintiff claims that the post was "spreading rumors that [Plaintiff] was sleeping [with] a Caucasian supervisor…to be reinstated to her job."

(ECF No. 14, p. 2). However, Plaintiff testified that she was not made aware of Hooper's post until after Tyson had suspended her. Plaintiff admits that Tyson was not aware of any inflammatory posting by Hooper at the time Plaintiff was suspended. There is only one Facebook post that can be attributed to Hooper that was turned over during the investigation. The following is Hooper's post that elicited the "Bitch I got u tho…" response from Plaintiff's account:

> I have a certain friend on my list that likes to post Bible Scriptures like she some goody two shoes. Well here's two verses she may wanna look at. Thou shalt not bear false witness against thy neighbor and tho shalt not commit adultery. #ihatehypocrites

(ECF No. 10, Exh. 10). Apparently, the individual posting from Plaintiff's Facebook account assumed the above post was made in reference to Plaintiff. Hooper claims that it was not directed toward Plaintiff. After reviewing Hooper's Facebook post, Tyson determined that there was no basis to discipline Hooper. Plaintiff has not been able to produce any additional posts made by Hooper.

In her Complaint, Plaintiff alleges that she was terminated on the basis of her race; that she was retaliated against for making a complaint to her supervisor about the way she was being treated at work; and that her treatment created a hostile work environment. Tyson filed the present Motion for Summary Judgment.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995). This is a "threshold inquiry of…whether there is a need for trial—whether, in other words, there

4

are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

*A. Race Discrimination*

Plaintiff asserts a race discrimination claim against Tyson pursuant to Title VII, 42 U.S.C. § 1981, and the Arkansas Civil Rights Act ("ACRA").[1] To establish a *prima facie* case of race discrimination, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was meeting the employer's legitimate job expectations; and (4) a similarly situated employee outside the protected class was treated differently. *Tolen v. Ashcroft*, 377 F.3d 878, 882 (8th Cir. 2004). A failure to establish just one

---

[1] All of Plaintiff's claims under Title VII; § 1981; and ACRA are governed by same standards. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009); *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 703 (8th Cir. 2005).

5

element of a *prima facie* case defeats a Title VII discrimination claim.  *Tatum v. City of Berkeley*, 408 F.3d 543, 550-51 (8th Cir. 2005).

If the plaintiff can establish a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.  *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009).  If the defendant makes such a showing, the plaintiff must demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination.  *Id.*

In this case, Tyson argues that Plaintiff fails to establish a *prima facie* case for discrimination.  Specifically, Tyson argues that Plaintiff cannot demonstrate that she was meeting Tyson's legitimate job expectations or that there is a similarly situated employee who received more favorable treatment.  The Court agrees.

First, it does not appear that Plaintiff was meeting Tyson's legitimate job expectations. The grounds for her first suspension for dancing in September 2012 are not in dispute.  Her suspension stemming from the Facebook posts in November 2012 also appears to have been warranted.  Based on the information before Tyson at the time, the posts were made from Plaintiff's account and appeared to have been written by Plaintiff.  The posts were extremely graphic and derogatory, and Plaintiff herself admitted that a suspension would be justified if Tyson believed she had authored the post.  Even assuming that it was actually Plaintiff's daughter who made the Facebook posts, the Court finds that Tyson's decisions were justified on the facts before them at the time.  By all appearances, Plaintiff was directing threatening and derogatory messages to her co-workers.  This type of behavior certainly falls short of Tyson's legitimate job expectations.

6

Even if Plaintiff was meeting legitimate job expectations, she has failed to show that a similarly situated employee received more favorable treatment under the same circumstances. A similarly situated employee "must have dealt with the same supervisor, have been subjected to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1044 (8th Cir. 2007).

In this case, Plaintiff argues that Candie Hooper is a similarly situated employee who received more favorable treatment under the same circumstances. Specifically, Plaintiff argues that Hooper, a Caucasian, is similarly situated because 1) Hooper was involved in the September 2012 dancing incident but was not suspended and 2) Hooper made an inflammatory Facebook post about Plaintiff that went unpunished. Plaintiff's support for these allegations is lacking.

First, it is undisputed that Hooper, unlike Plaintiff, was not caught on video during the September 2012 dancing incident. Plaintiff alleges that Hooper was present at the time, but without evidence of her participation, Tyson had no basis upon which to discipline Hooper. Second, at the time of Plaintiff's second suspension, Tyson had no basis on which to discipline Hooper for an inflammatory Facebook posting. Plaintiff never reported to Tyson that Hooper was making inflammatory Facebook posts about her. In fact, Plaintiff states that she did not know about any inflammatory post by Hooper until after she was terminated.[2] With no reports or evidence of an inflammatory post by Hooper, Tyson obviously could not have taken disciplinary action against her. In sum, there was no evidence before Tyson that Plaintiff and Hooper engaged in comparable conduct. Accordingly, these two individuals are not similarly situated.

---

[2] As to Hooper's post that was turned over during the investigation, it can hardly be described as inflammatory. While the individual responding from Plaintiff's account assumed the post was about Plaintiff, the post was fairly vague and included no identifying information or threats against an individual. Accordingly, based on the nature of Hooper's post, it cannot be said that she engaged in the same conduct as Plaintiff without any mitigating or distinguishing circumstances. The posts are clearly distinguishable.

7

For the foregoing reasons, Plaintiff has failed to establish a *prima facie* case of race discrimination. Even if Plaintiff had established her *prima facie* case, Tyson has provided a legitimate, non-discriminatory reason for her termination, and Plaintiff has failed to show that Tyson's proffered reason for her suspension and termination was pretext. A plaintiff can establish pretext by showing "that the employer's explanation is unworthy of credence ... because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a prohibited reason more likely motivated the employer." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (quotations and citations omitted).

First, there is no indication in the record that Tyson's reason for Plaintiff's termination has no basis in fact. Tyson's investigation is well-documented. Second, even if the Court assumes that Candie Hooper is a sufficient comparator who engaged in similar behavior and escaped discipline, Plaintiff has offered no evidence that would allow the Court to infer that the disparate treatment was "more likely" motivated by race. The September 2012 dancing incident and the October 2012 Facebook posts clearly qualify as unacceptable workplace behavior. The record indicates that Plaintiff's suspensions were fully warranted and based solely on Plaintiff's documented behavior. Moreover, Plaintiff's Complaint and her own deposition testimony show that her alleged mistreatment by co-workers and supervisors stemmed from their frustration that she was reinstated after being terminated in September 2012. Plaintiff states that she had "received too much attention from the co-workers about her reinstatement…[and] management used the Facebook posting by Plaintiff's daughter as a pretext to fire the Plaintiff." (ECF No. 14, p. 6). Assuming *arguendo* that Plaintiff was unfairly targeted for suspension, her own testimony tends to show that any targeting was more likely the result of her September 2012 reinstatement, not her race.

In sum, the fact that a Caucasian allegedly engaged in similar behavior and escaped punishment is not enough to establish that Tyson's stated reason for Plaintiff's termination was pretextual. Accordingly, Plaintiff's race discrimination claim fails and Tyson is entitled to summary judgment on this claim.

*B. Retaliation*

Plaintiff's Complaint alleges that she was retaliated against for "protest[ing] that she was being treated differently because of her race…." Plaintiff appears to be referring to the fact that she reported to her supervisor, Carolyn Box, that her co-workers were mistreating her and calling her names such as "Uncle Tom," a "snitch," and a "Mexican Lover." Shortly after making these complaints, an investigation ensued and Plaintiff's Facebook posts came to light. She was suspended roughly eight days after making her first complaints.

In order to make a prima facie case of retaliation, Plaintiff must show (1) that the complaints made to her supervisor were protected activity; (2) that an adverse employment action occurred; and (3) that there is a causal connection between the two. *Jackson v. Missouri Pac. R. Co.*, 803 F.2d 401, 406-07 (8th Cir. 1986). The burden of articulating a legitimate nondiscriminatory reason for discharge then shifts to Tyson. *Id*. Once Tyson meets this burden, Plaintiff must then show that her engagement in the protected activity constituted a motivating factor in the discharge and that the stated reason for the discharge was pretextual. *Id*.

The Court will assume *arguendo* that Plaintiff's Complaint has established a *prima facie* case for retaliation. Tyson has met its burden of articulating a nondiscriminatory reason for Plaintiff's discharge—namely, her second suspension for the Facebook posts in October 2012. In her response to Tyson's Motion for Summary Judgment, Plaintiff did not set forth any evidence or arguments in support of her retaliation claim. Accordingly, she has not carried her

9

burden of showing that Tyson's reason for her termination was pretextual and that retaliation was a motivating factor in her termination. For this reason, Plaintiff's retaliation claim fails and Tyson is entitled to summary judgment on this claim.

*C. Hostile Work Environment*

Plaintiff's Complaint alleges that she was subjected to a hostile work environment. Her hostile work environment claim involves allegations that she was mistreated by co-workers and called names such as "Uncle Tom," "snitch," and "Mexican Lover." Plaintiff alleges generally that her supervisors were hostile toward her because they were frustrated with the fact that Plaintiff was reinstated in September 2012.

"To sustain a claim for hostile work environment, a plaintiff must show that (1) he or she is a member of a protected class; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected class; and (4) the harassment affected a term, condition, or privilege of his or her employment….The workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive." *Anderson v. Durham D & M, L.L.C*., 606 F.3d 513, 518 (8th Cir. 2010) (internal quotation and citations omitted).

It appears that the only race-based harassment that Plaintiff has alleged is that someone told her that she had been called an "Uncle Tom" on at least one occasion. By Plaintiff's own admission, all of the other alleged mistreatment stemmed from her co-worker's dissatisfaction with her reinstatement, not her race. While the alleged name-calling is certainly distasteful behavior, Plaintiff has not alleged facts that rise to the level of pervasive, severe, and intimidating behavior required to sustain a hostile work environment claim. *See Singletary v. Missouri Dep't of Corr.,* 423 F.3d 886 (8th Cir. 2005) (finding job environs where the plaintiff

had second-hand knowledge his co-workers and some managers referred to him as a "nigger" and where his vehicle had been vandalized on several occasions not objectively severe and pervasive); *Bainbridge v. Loffredo Gardens, Inc*., 378 F.3d 756, 759 (8th Cir.2004) (finding racial remarks, made directly to plaintiff, once a month for two years by owner and operators, was insufficient to render the workplace objectively hostile); *Miles v. BG Excelsior Ltd. P'ship*, 4:08CV02801 SWW, 2011 WL 124300 (E.D. Ark. Jan. 14, 2011). Accordingly, Plaintiff's hostile work environment claim fails and Tyson is entitled to summary judgment on this claim.[3]

## CONCLUSION

For the reasons explained above, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 10) should be and hereby is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. An Order of even date consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 29th day of July, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[3] As with her retaliation claim, Plaintiff's response to Tyson's Motion for Summary Judgment did not address Tyson's arguments attacking her hostile work environment claim. Accordingly, the Court has been forced to rely solely on the allegations in Plaintiff's Complaint and the exhibits provided by Tyson that detail Plaintiff's complaints to her supervisors.